# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

CITY OF JERSEY CITY,

        Plaintiff,

v.

THE PORT AUTHORITY OF NEW
YORK AND NEW JERSEY and
THE PORT AUTHORITY TRANS-
HUDSON CORPORATION,

        Defendants.

---

Honorable Susan D. Wigenton, U.S.D.J.

Civil Action No. 2:14-cv-03286
(SDW)(SCM)

**Filed Electronically**

**Oral Argument Requested**

**Return Date:  July 6, 2015**

---

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION
## TO DISMISS COUNT SEVEN AND COUNT NINE OF PLAINTIFF'S
## AMENDED COMPLAINT

---

DUGHI, HEWIT & DOMALEWSKI, P.C.
340 North Avenue
Cranford, New Jersey 07016
(908) 272-0200
Craig A. Domalewski
cdomalewski@dughihewit.com
Attorneys for Defendants, The Port Authority of
New York and New Jersey and The Port Authority
Trans-Hudson Corporation

**On the Brief:**
Craig A. Domalewski
Scott A. Hall
Benjamin H. Zilbergeld

# TABLE OF CONTENTS

Page

**PRELIMINARY STATEMENT** ....................................................  1

**STATEMENT OF FACTS** .................................................  4

**LEGAL ARGUMENT** ..................................................  8

**MOTION TO DISMISS STANDARD** ..........................................  8

    **POINT I**

    AMENDED COUNT SEVEN SHOULD BE DISMISSED
    BECAUSE IT FAILS TO SUFFICIENTLY AND
    APPROPRIATELY PLEAD THE ELEMENTS
    OF AN ESTOPPEL CLAIM ...................................................  11

    **POINT II**

    AMENDED COUNT NINE-WHOLESALE
    AGGRANDIZEMENT OF PROPERTY BY THE PORT
    AUTHORITY-FAILS TO STATE A CLAIM UPON
    WHICH RELIEF CAN BE GRANTED ..................................  13

    1.    Jersey City's Reliance on *Aviation Services*
        is Misplaced ..................................................  14

    2.    Jersey City Provides No Factual Basis for
        Concluding that Port Authority Property is
        Vacant and/or Unused ..................................................  16

    3.    Jersey City's Allegations Concerning the Port
        Authority's Pre-Development Site Acquisition
        Program are Erroneous ..................................................  19

**CONCLUSION** ..................................................  22

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>CASES</u>

*Ashcroft v. Iqbal*, 556 *U.S.* 662 (2009) ................................................  9

*Aviation Services, Inc. v. Bd. of Adjustment of Twp. of Hanover*,
20 *N.J.* 275 (1956)..........................................................................  14,15

*Bell Atlantic Corp. v. Twombly*, 550 *U.S.* 544 (2007) ........................  9

*Bush Terminal Co. v. City of N.Y.,* 282 *N.Y.* 306 (N.Y. 1940) ...........  7

*Cal. Pub Employee' Retirement Sys. v. Chubb Corp.*,
No. Civ. No. 00–4285(GEB), 2002 WL 33934282,
at *13 (D.N.J. June 26, 2002) .............................................................  11

*Citizens for Peace in Space v. City of Colo. Springs*, 477 F.3d
1212 (0th Cir. 2007)...........................................................................  17

*City of Edinburgh Council v. Pfizer, Inc.*, 754 *F.*3d 159
(3d Cir. 2014)....................................................................................  10

*City of Newark v. Essex Cnty. Bd. of Taxation*, 54 *N.J.* 171,
*cert. denied*, 396 *U.S.* 987 (1969) .......................................................  7

*Denius v. Dunlap*, 330 F.3d 919 (7th Cir. 2003) ...............................  17

*Hynoski v. Columbia Cnty. Redevelopment Auth.*,
941 *F. Supp.* 2d 547 (M.D. Pa. 2013)................................................  9

*In re Burlington Coat Factory Sec. Litig.*, 114 *F.*3d 1410
(3d Cir. 1997)....................................................................................  10

*In re Nice Sys., Ltd. Sec. Litig.*, 135 *F. Supp.* 2d 551
(D.N.J. 2001).....................................................................................  9

*Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*,
298 F.3d 600 (7th Cir. 2002).............................................................  17

*McCabe v. Crawford & Co.*, 210 *F.R.D.* 631(N.D.Ill. 2002).............   11

*Miller v. Miller*, 97 *N.J.* 154 (1984)....................................   2,12

*Mobil Oil Corp. v. Greenwich Tp.*, 20 *N.J.Tax* 66 (2002).................   19

*Oshinsky v. New York Football Giants, Inc.*,
No. CIV.A.09-CV1186(PGS), 2009 WL 4120237, at *3
(D.N.J. Nov. 17, 2009) ........................................................   10

*Pahls v. Thomas*, 718 *F.*3d 1210 n. 1 (10th Cir. 2013) .....................   17

*Phillips v. Cnty. of Allegheny*, 515 *F.*3d 224 (3d Cir. 2008) ..............   9

*Summer Cottagers' Ass'n of Cape May v. Cape May*,
19 *N.J.* 493 (1955)...........................................................   12

*United States v. Chapel*, 41 F.3d 1338 (9th Cir. 1994)......................   17

*United States v. Perea-Rey*, 680 F.3d 1179 (9th Cir. 2012) ...............   17

*United States v. Piggie*, 622 F.2d 486 (10th Cir. 1980)....................   17

*Virgin Islands v. Gereau*, 523 *F.*2d 140 (3d Cir. 1975),
*cert. denied*, 424 *U.S.* 917 (1976) ......................................   10

RULES AND STATUTES

*Federal Rule of Evidence* 201 ...............................................   10,17
*Federal Rule of Evidence* 201(b) ..........................................   17
*Fed. R. Civ. Pro.* 8(a)(2) ...................................................   8,9
*Fed. R. Civ. Pro.* 12(b)(6) ..................................................   1,8,10

*N.J.A.C.* 18:12-2.2...........................................................   18

*N.J.S.A.* 32:1-1 *et seq.* ......................................................   6
*N.J.S.A.* 32:1-7 ...............................................................   4,6
*N.J.S.A.* 32:1-35.4 ..........................................................   5
*N.J.S.A.* 32:1-35.5 ..........................................................   5

*N.J.S.A.* 32:1-35.50 *et seq.*..................................................................... 6
*N.J.S.A.* 32:1-35.59 ................................................................................ 5
*N.J.S.A.* 32:1-35.60 ................................................................................ 5,6,7
*N.J.S.A.* 32:1-118 ................................................................................... 6
*N.J.S.A.* 32:1-131 ................................................................................... 5,8
*N.J.S.A.* 32:1-144 ................................................................................... 6,8,20,21
*N.J.S.A.* 54:4-27 .................................................................................... 18

Pursuant to *Federal Rule of Civil Procedure* 12(b)(6), Defendants respectfully submit this brief in support of their Motion to Dismiss Counts Seven and Nine of Plaintiff's Amended Complaint.

## PRELIMINARY STATEMENT

On May 22, 2014, Jersey City filed a nine-count Complaint against the Port Authority of New York and New Jersey and the Port Authority Trans-Hudson Corporation (hereinafter collectively the "Port Authority") contending under various legal theories that the Port Authority owes the City more than $400 million in payments for taxes or Payments In Lieu of Taxes ("PILOT") and seeking other relief (hereinafter, "Initial Complaint").  Following argument of the Port Authority's Motion to Dismiss, on February 18, 2015, this Court dismissed Counts Seven (Estoppel) and Nine (Declaratory Judgment – Wholesale Aggrandizement) of the Initial Complaint without prejudice.  Certification of Scott A. Hall, Esq. ("Hall Cert.") at ¶ 3 and Ex. 1 (February 18, 2015 Order).

Count Seven was dismissed because Plaintiff failed to "sufficiently and appropriately" plead the elements of a claim for estoppel.  Hall Cert. at ¶ 4 and Ex. 2 (February 22, 2015 Transcript of Hearing on Motion to Dismiss ("Hearing Tr.")) at 53:20-24.  Count Nine was dismissed because Plaintiff failed to "give any clear indication of the nature of the claim."  *Id*. at 54:17-19.  On April 1, 2015, Plaintiff filed an Amended Complaint which added factual allegations to Count

Seven and Count Nine.  Hall Cert. at ¶ 5 and Ex. 3 (Amended Complaint).  As explained in more detail below, Jersey's City's amended Count Seven and amended Count Nine fail to cure the defects which resulted in dismissal of these counts from the Initial Complaint.  Accordingly, both Count Seven and Count Nine should be dismissed.

First, while Jersey City's amended Count Seven provides new factual allegations referencing examples of purported Port Authority PILOT agreements and leases involving property outside of Jersey City, none of those allegations supports Plaintiff's estoppel claim.  *Id.* (Amended Complaint) at ¶¶196-199.  In order to state a valid claim for estoppel under New Jersey law, Plaintiff must allege that the Port Authority intentionally induced Jersey City to rely on false representations to its detriment.  *See Miller v. Miller*, 97 *N.J.* 154, 163 (1984).  Jersey City's amended Count Seven fails to allege facts satisfying this or the other elements of an estoppel cause of action.  Accordingly, the Court should dismiss Count Seven of the Amended Complaint.

Second, Jersey City added three (3) paragraphs to Count Nine in support of a "wholesale aggrandizement" claim.  These paragraphs contain erroneous factual allegations concerning the Port Authority Pre-Development Site Acquisition ("Pre-SAP") program and improperly allege that certain Port Authority property is "vacant" and/or "unused."  *See* Hall Cert. at ¶ 5 and Ex. 3 (Amended Complaint) at

¶¶215-216, 218-219.  These new "facts" do not provide the basis of a legally cognizable claim.  As established in the Defendants' previous motion to dismiss, New Jersey does not recognize this alleged cause of action and no factual allegations can cure this legal defect.  Moreover, Jersey City ignores information integral to the Amended Complaint which directly refutes the new allegations, including materials attached to the Amended Complaint, publically available information maintained by the State of New Jersey, information prepared by Jersey City's Tax Assessor and other information which is subject to judicial notice.  As Plaintiff's new factual allegations are plainly false and still fail to allege a legally cognizable claim, Count Nine of the Amended Complaint should be dismissed.

Finally, despite Jersey City's efforts to supplement the allegations contained in Counts Seven and Nine of the Initial Complaint, there is simply no merit to these claims.  The Legislatures of New York and New Jersey consciously used broad empowering language in the bi-state compact (hereinafter the "Compact") to confer wide-ranging powers on the Port Authority to facilitate its activities for the benefit of the public, and that property used in furtherance of these functions is tax exempt.  Pertinent statutes and case law provide in clear and unambiguous terms that (1) property used by the Port Authority is not subject to taxation; (2) the Port Authority may, but is not required to, enter into PILOT agreements with municipalities; and (3) when the Port Authority does enter into PILOT agreements,

it is not permitted to make PILOT payments over and above the amount last paid as taxes on property it acquires.

For these and the following reasons, the Port Authority respectfully submits that Count Seven and Count Nine of the Amended Complaint should be dismissed.

## STATEMENT OF FACTS

The Port Authority was created by bi-state Compact entered into between New York and New Jersey and approved by Congress in 1921, as amended and supplemented thereafter.  PATH is a wholly-owned subsidiary of the Port Authority that operates an inter-city rapid transit system between points in New Jersey and New York City.  In the founding Compact, the Legislatures endowed the Port Authority with wide-ranging powers with respect to transportation and terminal facilities, as follows:

> The port authority shall [have] full power and authority to purchase, construct, lease and/or operate any terminal or transportation facility within [the port district]; and to make charges for the use thereof; ***and for any of such purposes to own, hold, lease and/or operate real or personal property*** …

> [*N.J.S.A.* 32:1-7 (emphasis added)].

The broad scope of the Port Authority's delegated powers and the policy that they be liberally construed have been reaffirmed each time the States have acted to extend the Port Authority's mission.  The Legislatures have consistently declared the Port Authority's activities to be "in all respects for the benefit of the people of

the States of New York and New Jersey, for the increase of their commerce and prosperity and for the improvement of their health and living conditions; and the port authority … shall be regarded as performing an essential governmental function in undertaking the effectuation thereof, and in carrying out the provisions of law relating thereto." *N.J.S.A.* 32:1-35.59 (PATH and World Trade Center) (hereinafter "PATH"); *see also, e.g., N.J.S.A.* 32:1-35.4, (airports); *N.J.S.A.* 32:1-131 (inter-state bridges and tunnels).  Accordingly, the Legislatures have directed that, "[t]he port authority shall be required to pay no taxes or assessments upon any of the property acquired or used by it for any of the purposes of this act …." *N.J.S.A.* 32:1-35.60 (PATH); *see also, e.g., N.J.S.A.* 32:1-35.5 (airports); *N.J.S.A.* 32:1-131 (bridges and tunnels).

Jersey City's Amended Complaint identifies forty-one (41) properties owned by the Port Authority in Jersey City.  *See* Hall Cert. at ¶5 and Ex. 3 (Amended Complaint) at ¶216 and Ex. A.  Those properties, categorized by the statutory authority under which they were acquired by the Port Authority and related PILOT statute, if any, are as set forth below.

| 14 PATH Properties | Applicable Statutes |
|---|---|
| Columbus Drive; 350 Washington Street; PATH Plaza; 215 Baldwin Avenue; Two Chestnut Avenue (2 properties); Inside Plots (3 properties); Merseles Street; 100 Academy Street; Waldo Avenue; 246 Broadway; 90 Columbus Drive; and 154 Halleck Ave. | *N.J.S.A.* 32:1-35.50 *et seq.* PILOT Statute:  *N.J.S.A.* 32:1-35.60 |
| **8 Holland Tunnel Properties** | **Applicable Statutes** |
| 124 Thirteenth Street; 234 Provost Street; Fourteenth & Provost; 236 Provost Street; 80 River Drive (Rear); 80 River Drive; 86 River Drive; and 88 River Drive. | *N.J.S.A.* 32:1-118 *et seq.* PILOT Statute: None |
| **17 Marine Terminal Property** | **Applicable Statutes** |
| 20 Colony Road; Port Jersey Blvd. (14 properties); 20 Harbor Drive; and Route 169. | *N.J.S.A.* 32:1-1 *et seq.* PILOT Statute:  *N.J.S.A.* 32:1-144 |
| **1 Port Authority Pre-Development Site Acquisition Program Property** | **Applicable Statutes** |
| 2 Montgomery Street | *N.J.S.A.* 32:1-7 PILOT statute:  None. |

Hall Cert. at ¶ 5 and Ex. 3 (Amended Complaint) at ¶216 and Ex. A.[1]

Beginning with PATH facilities, the Port Authority is not required to pay property taxes on these properties, but may enter into PILOT agreements at its discretion providing for voluntary PILOT payments, with those payments capped at the sum last paid as taxes:

_____

[1] For purposes of this motion only and in accordance with *Rule* 12, the Port Authority accepts the designation of properties listed in ¶216 and Ex. A of the Amended Complaint.  The Port Authority reserves all rights, claims and defenses to challenge these designations as the litigation moves forward.

> The port authority **shall be required to pay no taxes or assessments** upon any of the property acquired or used by it for any of the purposes of this act …. However, to the end that no municipality shall suffer undue loss of taxes and assessments by reason of the acquisition and ownership of property by the port authority for any of the purposes of this act, the port authority is hereby authorized and empowered, *in its discretion*, to enter into a *voluntary* agreement or agreements with any municipality whereby the port authority will undertake to pay in lieu of taxes a fair and reasonable sum or sums annually in connection with any real property acquired and owned by the port authority for any of the purposes of this act. Such sums in connection with any real property acquired and owned by the port authority for any of the purposes of this act **shall not be more than the sum last paid as taxes upon such real property prior to the time of its acquisition by the port authority** ….

> [*N.J.S.A.* 32:1-35.60 (emphasis added)].

Port Authority-owned marine terminal property is similarly exempt from local taxation, *see Bush Terminal Co. v. City of N.Y.,* 282 *N.Y.* 306 (N.Y. 1940); *City of Newark v. Essex Cnty. Bd. of Taxation*, 54 *N.J.* 171, *cert. denied*, 396 *U.S.* 987 (1969), and statutorily-eligible for PILOT payments:

> To the end that … municipalities in the Port of New York District, may not suffer undue loss of taxes and assessments by reason of the acquisition and ownership of property therein by the [Port Authority], **the port authority is hereby authorized and empowered, *in its discretion*, to enter into a *voluntary* agreement** or agreements with any … municipality in said port district, whereby it will undertake to pay a fair and reasonable sum or sums annually in connection with any marine or inland terminal property owned by it, **not in excess of**

> **the sum last paid as taxes upon such property prior to the time of its acquisition by the port authority**.

[*N.J.S.A.* 32:1-144 (emphasis added)].

Likewise, properties acquired by the Port Authority in Jersey City and used in connection with the Holland Tunnel are neither taxable nor eligible for PILOT payments. *See N.J.S.A.* 32:1-131.

Jersey City itself, by and through its municipal tax assessor, has classified all Port Authority owned property at issue in this lawsuit as exempt public property on the exempt property tax list it is required to create annually under *Title* 54 of New Jersey's tax statutes. *See* Hall Cert. at ¶¶ 6-8 and Ex. 6 (Exempt Property List).

On May 22, 2014, Jersey City filed a nine-count Complaint ("Initial Complaint") against the Port Authority. On February 18, 2015, this Court dismissed Counts Seven and Nine of the Initial Complaint without prejudice. Hall Cert. at ¶ 3 and Ex. 1 (February 18, 2015 Order). On April 1, 2015, Plaintiff filed an Amended Complaint which amended Count Seven and Count Nine, only. *See* Hall Cert. at ¶ 5 and Ex. 3 (Amended Complaint) at ¶¶194-202, 212-223.

## LEGAL ARGUMENT

## MOTION TO DISMISS STANDARD

A motion under *Rule* 12(b)(6) is designed to test the sufficiency of the pleadings. The starting point in evaluating a *Rule* 12(b)(6) motion is the *Rule* 8(a)(2) requirement that a complaint allege "a short and plain statement of the

claim showing that the pleader is entitled to relief." *Rule* 8(a)(2).  The Court must

"accept all factual allegations as true, construe the complaint in the light most

favorable to the plaintiff, and determine whether, under any reasonable reading of

the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of*

*Allegheny*, 515 *F*.3d 224, 231 (3d Cir. 2008) (internal citations and quotation

marks omitted).  However, the requirement that the Court accept as true all

allegations in the complaint is not absolute.  "[F]actual allegations must be enough

to raise a right to relief above the speculative level on the assumption that all of the

allegations in the complaint are true." *Id*.  Moreover, "[t]hreadbare recitals of the

elements of a cause of action, supported by ***mere conclusory statements***, do not

suffice." *Ashcroft v. Iqbal*, 556 *U.S.* 662, 678 (2009) (*citing Bell Atlantic Corp. v.*

*Twombly*, 550 *U.S.* 544, 555 (2007)) (emphasis added); *see also In re Nice Sys.,*

*Ltd. Sec. Litig.*, 135 *F. Supp.* 2d 551, 565 (D.N.J. 2001) ("Legal conclusions made

in the guise of factual allegations, however, are given no presumption of

truthfulness") (citations omitted).

The analysis is "a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense." *Hynoski v. Columbia Cnty.*

*Redevelopment Auth*., 941 *F. Supp*. 2d 547, 554 (M.D. Pa. 2013) (*quoting Ashcroft*

*v. Iqbal*, *supra*, 556 *U.S.* at 678).  In performing the inquiry, the court must

evaluate "the complaint in its entirety, as well as other sources courts ordinarily

examine when ruling on *Rule* 12(b)(6) motions to dismiss, including documents incorporated into the complaint by reference and matters of which [the court] may take judicial notice." *City of Edinburgh Council v. Pfizer, Inc*., 754 *F.*3d 159, 166 (3d Cir. 2014) (citations and internal quotation marks omitted).  As part of that review, *Federal Rule of Evidence* 201 permits a court to take judicial notice of "adjudicative" facts not reasonably disputed that are either:  (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  "Facts possessing these characteristics are entitled to be considered by a judge without first being proved through the routine processes of introducing evidence." *Virgin Islands v. Gereau*, 523 *F.*2d 140, 147 (3d Cir. 1975), *cert. denied*, 424 *U.S.* 917 (1976).

Moreover, a court may consider "a document integral to or explicitly relied upon in the complaint" and consideration of such documents "will not convert a motion to dismiss into one for summary judgment." *Oshinsky v. New York Football Giants, Inc.*, No. CIV.A.09-CV1186(PGS), 2009 WL 4120237, at *3 (D.N.J. Nov. 17, 2009) (*citing In re Burlington Coat Factory Sec. Litig.*, 114 *F.*3d 1410, 1426 (3d Cir. 1997).  The test of whether a document is "integral" is not whether the plaintiff explicitly cited a document in a complaint because if "that were the case, a plaintiff could defeat a motion to dismiss merely by failing to cite

to or attach the documents." *Id.* (*citing McCabe v. Crawford & Co.*, 210 *F.R.D.* 631, 639 n. 4 (N.D.Ill. 2002)). Finally, "a plaintiff cannot defeat consideration of a integral document on a motion to dismiss unless it can offer a factual basis questioning its authenticity." *Id.* (*citing Cal. Pub Employee' Retirement Sys. v. Chubb Corp.*, No. Civ. No. 00–4285(GEB), 2002 WL 33934282, at *13 (D.N.J. June 26, 2002)).

Applying these standards, Counts Seven and Nine of Jersey City's Amended Complaint fail to plead proper causes of action. Accordingly, Count Seven and Count Nine of the Amended Complaint should be dismissed.

## POINT I

### AMENDED COUNT SEVEN SHOULD BE DISMISSED BECAUSE IT FAILS TO SUFFICIENTLY AND APPROPRIATELY PLEAD THE ELEMENTS OF AN ESTOPPEL CLAIM

This Court dismissed Count Seven of the Initial Complaint because Jersey City failed to sufficiently and appropriately plead "the factors that have to be met in an estoppel claim . . . ." Hall Cert. at ¶ 4 and Ex. 2 (Hearing Tr.) at 54:19-21. As explained further below, Jersey City's Amended Count Seven suffers the same flaw and should be dismissed.

Estoppel is a common law equitable concept. "The essential principle of the policy of estoppel . . . is that one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with

good reason and in good faith has relied upon such conduct." *Summer Cottagers'*
*Ass'n of Cape May v. Cape May*, 19 *N.J.* 493, 503-04 (1955).  In New Jersey, a
successful plaintiff must allege and prove that:  (1) the conduct was performed, or
representation made, intentionally or "under such circumstances that it was both
natural and probable that it would induce action"; (2) reliance; and (3) a change in
position to the plaintiff's detriment.  *Miller v. Miller*, 97 *N.J.* 154, 163 (1984).

The amendments made by Jersey City to Count Seven are set forth in ¶196
through ¶202 of the Amended Complaint.  These paragraphs include alleged
examples of Port Authority PILOT and lease agreements with entities other than
Jersey City, including agreements related to:  (1) the Newark Legal and
Communications Center; (2) the City of Elizabeth; (3) the City of Bayonne; and
(4) the World Trade Center site.  *See* Hall Cert. at ¶ 5 and Ex. 3 (Amended
Complaint) at ¶¶196-199.  Jersey City makes no attempt to tie these alleged new
facts to the elements of estoppel.  Instead, the City simply concludes that because
the Port Authority entered into alleged PILOT agreements with other
municipalities it is "estopped from not entering into PILOT agreements with Jersey
City."  *See id*. at 200.  None of Jersey City's new allegations:  (1) identifies any
actionable "representations" made by the Port Authority; (2) asserts that the City
reasonably relied on any representations to its detriment; or (3) shows that Jersey

City detrimentally changed its position based on any Port Authority representations.

Jersey City's failure to detail any alleged wrongful conduct, any affirmative misrepresentations on the part of the Port Authority, and any reliance on such misrepresentation to the City's detriment is fatal to Count Seven. As this Court previously ruled, it is not enough for the City to simply conclude, as it did in the Initial Complaint, that it is entitled to relief. Accordingly, because Jersey City has not sufficiently or appropriately pled the material elements of an estoppel claim, Count Seven should be dismissed.

## POINT II

AMENDED COUNT NINE-WHOLESALE AGGRANDIZEMENT
OF PROPERTY BY THE PORT AUTHORITY-FAILS TO STATE
A CLAIM UPON WHICH RELIEF CAN BE GRANTED

This Court dismissed Count Nine of the Initial Complaint because Plaintiff failed to "give any clear indication of the nature of the claim." Hall Cert. at ¶ 4 and Ex. 2 (Hearing Tr.) at 54:17-19. In an effort to bolster Count Nine, Plaintiff added three (3) paragraphs which include a list of allegedly "vacant" Port Authority properties, erroneous allegations regarding the Port Authority Pre-Development Site Acquisition ("Pre-SAP") program and alleged warehousing of properties to avoid payment of taxes or PILOT agreements. *See* Hall Cert. at ¶5 and Ex. 3 (Amended Complaint) at ¶¶216, 218-219. Based on these allegations,

Jersey City claims that the Port Authority has undertaken what it describes as "a program of wholesale aggrandizement," of property within the City and that the Port Authority should be compelled to disgorge "all properties not presently used or presently intended to be used for a statutorily authorized purpose." *Id.* (Amended Complaint) at ¶213. Jersey City's amended Count Nine lacks merit from both a legal and factual standpoint and should be dismissed.

### 1.    Jersey City's Reliance on *Aviation Services* is Misplaced.

Amended Count Nine should be dismissed because "wholesale aggrandizement" does not constitute a recognized cause of action. Like the Initial Complaint, Jersey City's amended Count Nine is based entirely on *Aviation Services, Inc. v. Bd. of Adjustment of Twp. of Hanover*, 20 *N.J.* 275 (1956), where the Court used the term "wholesale aggrandizement." The *Aviation Services* language quoted by Jersey City is taken out of context and falls short of establishing that there is any such cause of action in New Jersey. *See* Hall Cert. ¶5 and Ex. 3 (Amended Complaint) at ¶214.

The issue in *Aviation Services* was whether an airport owned by Morristown but located in the Township of Hanover was subject to Hanover's zoning ordinances. Finding the airport to fall within the "legislative design," the New Jersey Supreme Court held it to be immune from regulation by Hanover. *Id.* at 282-83. Importantly, the Court did not create a cause of action or even establish a

bright-line rule.  Instead, apparently concerned that the holding might be read too broadly, the Court stated *in dicta* that *municipalities* should be cautious of over-reaching in similar circumstances:

> Our holding in this case is not to be considered as giving judicial recognition or impetus to a program of wholesale aggrandizement of territory.  ***The authority bestowed upon municipalities*** … must be reasonably exercised in response to the public need, both present and that fairly to be anticipated.
>
> [*Id.* at 285 (emphasis added)].

*Aviation Services* does not establish a cause of action and the New Jersey Supreme Court, neither in that case nor subsequently, has ever indicated that it would consider divestment of public property by a public entity based on such a theory, as Jersey City is seeking here.  *Aviation Services* does not discuss, let alone provide a basis to support, the incredibly broad relief requested by Jersey City for the Port Authority to disgorge its property.  Indeed, a careful review of the *Aviation Services* decision makes clear that the facts and circumstances of that case, which concerned the alleged actions of a municipality infringing on the authority of another municipality, have no bearing on the Port Authority, which is a bi-state entity.  Thus, whatever proposition the *Aviation Services* case stands for, it is clear that it does not create a cause of action, it does not provide the basis for disgorgement of property, and it does not apply to the Port Authority.

2.    **Jersey City Provides No Factual Basis for Concluding that Port Authority Property is Vacant and/or Unused.**

Jersey City's amended Count Nine identifies ten (10) Port Authority-owned properties that the City contends are vacant.  Hall Cert. at ¶ 5 and Ex. 3 (Amended Complaint) at ¶216.  Elsewhere in the Amended Complaint, but incorporated by reference in amended Count Nine, Jersey City alleges that nine (9) "non-PILOT Port Jersey" properties (hereinafter, collectively, "Port Jersey Properties") are vacant and unused.  *Id.* (Amended Complaint) at ¶¶60, 65-66 and Ex. A at Section II, 1 through 9.  Several of the Port Jersey Properties alleged to be vacant and unused overlap with the ten (10) Port Authority-owned properties that the City contends are vacant.  Thus, the City alleges that a total of sixteen (16) Port Authority properties are vacant or unused.  Jersey City's claims are unfounded.

Five (5) of the nine (9) Port Jersey Properties referenced in the Amended Complaint lie almost entirely under water.[2]  *See* Hall Cert. at ¶¶13-17 and Ex. 9a-9e (2010 Tax maps[3] and 2014 Google Earth maps[4] of Port Jersey properties).  The

---

[2]  The five (5) Port Jersey Properties that lie almost entirely under water are identified in Exhibit A of the Amended Complaint as Port Jersey Blvd. - Block 30501, Lots 3, 12, 13 and 14; and Block 30404, Lot 4.

[3] As explained in more detail in the Hall Cert., the 2010 Tax map materials referenced at Hall. Cert ¶¶ 11-27 and Ex. 9a-9e, 10a-10d and 11a-11f were obtained from a website maintained by the State of New Jersey, Department of Treasury, Transparency Center, which compiles statewide property tax information and records and provides the ability to search this information at "https://www.yourmoney.nj.gov/transparency/property."  The referenced exhibits

other four (4) Port Jersey Properties[5] contain buildings, paved parking areas and

paved container storage areas.  *See* Hall Cert. at ¶¶18-21 and Exhibits 10a-10d

(2010 Tax maps and 2014 Google Earth maps of Port Jersey properties).  As for

the other properties, publicly-available tax records establish that one (1) property is

not owned by either of the Defendants (*see* Hall Cert. at ¶¶9-10 and Ex. 8) and the

remaining properties contain buildings, roadways providing access to Port

---

obtained from this website are subject to judicial notice by the Court.  *See
Fed.R.Evid.* 201; *see also Denius v. Dunlap*, 330 *F*.3d 919, 926-27 (7th Cir. 2003)
(taking judicial notice of information from official government website); *see also
Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 *F*.3d 600, 607 (7th
Cir. 2002) (taking judicial notice of information from official website of the
FDIC); *see also United States v. Chapel*, 41 *F*.3d 1338, 1342 (9th Cir. 1994)
(district court properly took judicial notice of FDIC-insurance status as the
governmental agency "is a source whose accuracy cannot be reasonably
questioned") (quotations omitted).

[4] As explained in more detail in the Hall Cert., the 2014 Google Earth maps
referenced at Hall. Cert ¶¶ 12-27 and Ex. 9a-9e, 10a-10d and 11a-11f were obtained
from the Google Earth desktop application.  The Google Earth maps are subject to
judicial notice by the Court.  *See Fed.R.Evid.* 201; *see also Pahls v. Thomas*, 718
*F*.3d 1210 n. 1 (10th Cir. 2013) (taking judicial notice of the location of protestors
during a Presidential visit by way of a Google map and satellite image); *see also
United States v. Perea-Rey*, 680 *F*.3d 1179, 1182 n. 1 (9th Cir. 2012) (taking judicial
notice of a Google map and satellite image as "'a source[ ] whose accuracy cannot
reasonably be questioned,' at least for the purpose of determining the general
location of the home") (*quoting Fed.R.Evid.* 201(b)); see also *Citizens for Peace in
Space v. City of Colo. Springs*, 477 *F*.3d 1212 n. 2 (10th Cir. 2007) (taking judicial
notice of an online distance calculation that relied on Google Maps data); *see also
United States v. Piggie*, 622 *F*.2d 486, 488 (10th Cir. 1980) ("Geography has long
been peculiarly susceptible to judicial notice for the obvious reason that geographic
locations are facts which are not generally controversial....").

[5] These four (4) Port Jersey Properties are identified in Exhibit A of the Amended
Complaint as Port Jersey Blvd. - Block 30501, Lots 4, 5, 6 and 7.

Authority property, paved parking areas and paved storage areas.  *See* Hall Cert. at

¶¶22-27 and Exhibits 11a-11f (2010 Tax maps and 2014 Google Earth maps of six

(6) properties).  Accordingly, Jersey City's claim that any of the sixteen (16)

properties are being warehoused is not accurate and does not support a claim of

wholesale aggrandizement.

  Moreover, Jersey City's claim that these sixteen (16) properties or any other

Port Authority owned properties in the City are vacant and/or unused is directly

contradicted by facts in the public record, including Jersey City's identification of

all property at issue in this litigation as "exempt public property."  Under New

Jersey statutes, each municipal tax assessor is required to create a list of all tax

exempt property in the municipality on an annual basis, and report the information

to the County.  *N.J.S.A.* 54:4-27.  Pursuant to the classification system promulgated

by the State of New Jersey Division of Taxation, Jersey City has regularly reported

thirty-six (36) of the subject properties as Class 15C -- "real property owned by

Federal, State, county or local governments or their agencies and ***devoted to public***

***use***;" and five (5) as Class 15F -- "real property ***exempt from taxation*** but not

described in any of the foregoing classes."  *N.J.A.C.* 18:12-2.2 (emphasis added)

and Hall Cert. at ¶¶ 6-8 and Ex. 6 (Exempt Property List).

  Integral to amended Count Nine is Jersey City's new alleged accounting of

Port Authority owned property that is "vacant" or "vacant and unused."  Just as

integral to this claim, but omitted from amended Count Nine, is the Jersey City

Tax Assessor's designation of the subject properties as tax exempt and devoted to a

public use.  Jersey City should not be permitted to deliberately omit this

information from the Amended Complaint in an effort to survive a motion to

dismiss.  Although the Tax Assessor's designation of this property as tax exempt

and devoted to a public use may not be convenient for Jersey City's legal theory in

this case, it is a matter of public record and there is no basis to question the

authenticity of this information.  *Mobil Oil Corp. v. Greenwich Tp.*, 20 *N.J.Tax* 66,

85 (2002) ("Because of the assessor's statutorily required independence in making

assessments, those assessments have earned a long-standing judicial presumption

of correctness.").  Accordingly, this Court should take judicial notice of the Jersey

City Tax Assessor's designation of the subject property as tax exempt and devoted

to a public use and dismiss amended Count Nine.

### 3.    Jersey City's Allegations Concerning the Port Authority's Pre-Development Site Acquisition Program are Erroneous.

Jersey City also alleges in amended Count Nine that the Port Authority Pre-

SAP program permits the Port Authority to "buy[] properties and basically

warehouse[] them to avoid paying current taxes on them."  Hall Cert. at ¶5 and

Ex. 3 (Amended Complaint) at ¶218.  Further, Jersey City alleges that marine

terminal properties "adjacent to Greenville Yards known as Port Jersey"

(hereinafter the "Global Terminal Property") have been warehoused by the Port

Authority under the Pre-SAP program to avoid paying taxes. *Id*. (Amended Complaint) at ¶¶218-219. Jersey City's characterization of the Pre-SAP program is inaccurate. More importantly, however, any allegation that the Global Terminal Property was acquired pursuant to the Port Authority's Pre-SAP program is refuted by a PILOT agreement entered and an ordinance passed by Jersey City.

Exhibit D to the Amended Complaint is a May 18, 2012 PILOT Agreement executed by the Port Authority and Jersey City relating to the Global Terminal Property (hereinafter "Global PILOT"). *Id*. (Amended Complaint) at ¶88 and Ex. D. The Global PILOT attaches Jersey City Ordinance No. 11-122 ("Ordinance 11-122") as Ex. A. *See id*. (Amended Complaint) at Ex. D. In Ordinance 11-122, Jersey City clearly acknowledges that: (1) The Port Authority is "undertaking the construction of a Marine Terminal in the Port Jersey area of the City of Jersey City"; (2) The Port Authority has "determined that the property, including a portion of Port Jersey Boulevard, is necessary, convenient or desirable for Marine terminal purposes"; and (3) The Global Marine Terminal was acquired by the Port Authority "for use as a Marine Terminal, all in accordance with *N.J.S.A*. 32:1-144." *Id.*[6]

---

[6] Exhibit D to the Amended Complaint and Ordinance 11-122 are attached to the Amended Complaint. Thus, each of these documents is subject to review by this Court in the context of this motion. *See supra* at 9-11 (Motion to Dismiss Standard).

The Global PILOT and Jersey City Ordinance 11-122 are integral to Plaintiff's Amended Complaint.  Contrary to the Plaintiff's allegations in the Amended Complaint, neither of these documents indicate that the Global Terminal Property was acquired by the Port Authority pursuant to the Pre-SAP program. Instead, the documents provide unambiguously that the Global Terminal Property is a Marine Terminal and was acquired by the Port Authority consistent with *N.J.S.A.* 32:1-144.  Thus, Jersey City's contention that the Global Terminal Property was acquired under the Pre-SAP program and somehow "warehoused" in an effort to avoid taxation is plainly incorrect based on documents attached to the Amended Complaint.

Fabricated allegations concerning the Pre-SAP program and the Global Terminal Property do not satisfy the pleading standards established by this Court. Absent these allegations, Jersey City is left with the same insufficiently pled claim that resulted in dismissal of Count Nine from the Initial Complaint.  For these reasons, amended Count Nine should be dismissed.

## <u>CONCLUSION</u>

Plaintiff's Amended Complaint attempts to supplement Counts Seven and Nine of the Initial Complaint with inaccurate factual allegations that fail to rectify pleading defects previously identified by the Court.  Amended Count Seven fails, as a matter of law, to assert a cause of action for estoppel.  Amended Count Nine also fails to allege a legally cognizable claim and is replete with erroneous alleged "facts" that fail to provide any basis for a claim.  For all of the foregoing reasons, it is respectfully submitted that Count Seven and Count Nine of the Amended Complaint should be dismissed.

DUGHI, HEWIT & DOMALEWSKI, P.C.
Attorneys for The Port Authority of New York and New Jersey and The Port Authority Trans-Hudson Corporation


By: */s*  Craig A. Domalewski
      Craig A. Domalewski, Esq.

Dated:  May 1, 2015